# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 13-50459

---

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2014

Lyle W. Cayce
Clerk

SARAH DOE, on behalf of herself and all others similarly situated;
KIMBERLY DOE, on behalf of herself and all others similarly situated;
RAQUEL DOE, on behalf of herself and all others similarly situated; ANNA
ROE, on behalf of herself and all others similarly situated; GEORGINA ROE,
on behalf of herself and all others similarly situated; EMILY ROE, on behalf
of herself and all others similarly situated; BETH ROE, on behalf of herself
and all others similarly situated; CONSTANCE ROE, on behalf of herself and
all others similarly situated,

                                        Plaintiffs - Appellees
v.

GEORGE ROBERTSON, ICE Contracting Officer's Technical Representative
(COTR); JOSE ROSADO, ICE COTR,

                                        Defendants - Appellants

---

Appeal from the United States District Court
for the Western District of Texas

---

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

     Sarah Doe and several other anonymous female immigrants
("Plaintiffs") were sexually assaulted while being transported from an
immigration detention center. They brought a *Bivens* action against federal
officials George Robertson ("Robertson") and Jose Rosado ("Rosado") for

No. 13-50459

violation of their Fifth Amendment due process right to freedom from "deliberate indifference to a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quotation marks omitted), alleging that the officials knew of violations of a contractual provision requiring that transported detainees be escorted by at least one officer of the same gender, and that the officials understood the provision aimed to prevent sexual assault. Robertson and Rosado moved to dismiss the action, arguing *inter alia* that they are entitled to qualified immunity. The district court denied their motion. Robertson and Rosado now appeal, and we reverse and remand with instructions to dismiss.

# I

Plaintiffs are female immigrants who, while waiting to be interviewed by asylum officers, were each detained by U.S. Immigration and Customs Enforcement ("ICE") at the T. Don Hutto Residential Center ("Hutto"), an immigration detention center in Texas. After each Plaintiff presented a prima facie case for asylum, she was released from Hutto on her own recognizance while her asylum claim remained pending. Upon each Plaintiff's release, Donald Dunn ("Dunn"), a male employee of the private entity Corrections Corporation of America ("CCA"), transported her from Hutto to the airport or bus station with no other officers present. During these transports, Dunn sexually assaulted each Plaintiff. He subsequently pleaded guilty to state and federal criminal charges arising from these assaults.

ICE contracts the operation of Hutto to Williamson County, Texas, pursuant to an Intergovernmental Service Agreement ("Service Agreement"). Williamson County, in turn, subcontracts this task to CCA, under an agreement incorporating the Service Agreement's terms. The Service Agreement requires that "[d]uring all transportation activities, at least one (1) transportation officer shall be of the same sex as the residents being

2

No. 13-50459

transported." Second Amended Complaint at ¶ 3 [hereinafter Complaint] (citing Service Agreement, art. III.D).[1]

Plaintiffs sued Robertson, Rosado, and others in district court for money damages. During the period of Dunn's assaults, Robertson and Rosado were federal officials who worked at Hutto as ICE Contracting Officer's Technical Representatives ("COTRs"). Plaintiffs alleged that Robertson and Rosado,

> as COTRs, were "employee[s] of ICE responsible for monitoring all technical aspects and assisting in administering the [Service Agreement]." [The COTR is] an on-site official, tasked with regular inspections and assessing overall performance by reviewing specific items in the areas covered by the relevant performance standards and by monitoring relevant activities at Hutto.

*Id.* at ¶¶ 221–22 (quoting Service Agreement, attachment 1). Furthermore, the Complaint recounted "numerous reports of sexual abuse and assault" in ICE facilities nationwide and alleged that in light of these incidents, "ICE and its officials and employees were inarguably acutely aware of the relevant risks female immigrant detainees faced from detention center officers and staff." *Id.* at ¶ 52. The Complaint further alleged that in 2007, a CCA-employed male guard had sex with a female detainee in her cell at Hutto, and that the guard was subsequently terminated. *Id.* at ¶ 42, 61.

In addition to contract-monitoring responsibilities, Plaintiffs alleged that Robertson and Rosado had responsibilities pertaining to detainee transport. Under the terms of the Service Agreement,

---

[1] CCA Policy 9-101 similarly mandates that "[o]nly staff of the same gender as the residents being transported will be assigned to transport residents that bond out." Complaint at ¶ 70. Moreover, the Service Agreement contained performance standards regarding sexual assault prevention, and the Complaint accordingly alleged that COTRs had a "direct and personal responsibility to take the measures necessary to prevent such sexual assaults." *Id.* at ¶¶ 228–30.

No. 13-50459

> CCA would provide, "upon request and as scheduled
> by the COTR or Contracting Officer, necessary escort
> and transportation services for residents to and from
> designated locations." . . . Pursuant to Attachment 1
> [to the Service Agreement], "[t]ransportation routes
> and scheduling [had to] be accomplished in the most
> economical manner as approved by the COTR."
> Moreover . . . , CCA "had to establish a communication
> system that [had] direct and immediate contact with
> all vehicles . . . ." . . . Thus, the [Service Agreement]
> contemplated the ICE Defendants having direct and
> personal involvement with the details of transports.

*Id.* at ¶¶ 226–27 (quoting Service Agreement, art. III.D, attachment 1). Plaintiffs further alleged that COTRs had access to logbooks and reports related to Hutto's operations. *Id.* at ¶ 223. These documents indicated that during the period relevant to this action, at least 22 male officers made a total of 77 transport trips with female detainees without a female officer present. *Id.* at ¶¶ 72–74.

In summarizing their cause of action, Plaintiffs alleged that Robertson and Rosado

> exhibited deliberate indifference in their respective
> capacities by (1) willfully blinding themselves to the
> need to implement steps to prevent sexual assault
> during transport activities, even when those steps
> were required by applicable contracts, policies, and
> standards; and (2) failing appropriately to monitor
> transport activities which they knew to be proceeding
> in violation of applicable contracts, policies, and
> standards, under circumstances in which they knew
> that the applicable contracts, policies, and standards
> were designed to prevent sexual assault on the named
> plaintiffs and on the other members of the Class.

4

*Id.* at ¶ 242.   Additionally, Plaintiffs alleged that Robertson and Rosado showed "deliberate indifference" to the "risk of assault and sexual assault" on Plaintiffs, which risk was "clear, obvious, and ongoing." *Id.* at ¶ 243–44.

Before the district court, Robertson and Rosado moved to dismiss on grounds that a *Bivens* action could not be brought against COTRs and that they were entitled to qualified immunity.   A magistrate judge recommended that the motion be denied, and the district court approved and accepted the recommendation.   Robertson and Rosado now appeal, contending that they are entitled to qualified immunity.

## II

We review de novo a district court's denial of a motion to dismiss on qualified immunity grounds. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).   Although we "construe facts in the light most favorable to the nonmoving party," *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), we must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*   A complaint must fail if it offers only "naked assertions devoid of further factual enhancement." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks and alterations omitted).

## III

Robertson and Rosado contend that because they are entitled to qualified immunity, the district court erred in denying their motion to dismiss.

An action alleging that a federal government actor committed constitutional violations must be brought under *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2]  However, the government actor may be entitled to qualified immunity protecting him "from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  "[E]valuating qualified immunity is a two-step process, and the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013).  First, the plaintiff must allege "a violation of a clearly established constitutional or statutory right." *Id.*  A right is clearly established if "existing precedent [has] placed the statutory or constitutional question *beyond debate.*"  *Morgan*, 659 F.3d at 371 (citation omitted).  If the first step is satisfied, we must "determine whether the defendant's conduct was objectively reasonable." *Wyatt*, 718 F.3d at 503.

When a detainee alleges that a federal government official's episodic act or omission violated her Fifth Amendment due process right to basic human needs, we must decide whether the official exhibited deliberate indifference under *Farmer v. Brennan*, 511 U.S. 825 (1994).  *Cf. Hare v. City of Corinth*, 74 F.3d 633, 636, 648–49 (5th Cir. 1996) (en banc) (applying *Farmer*'s Eighth Amendment deliberate indifference test to pretrial detainee's Fourteenth Amendment due process claim against state officials).  In *Farmer*, a transsexual inmate brought a *Bivens* action against federal prison officials who

---

[2] We assume without deciding that *Bivens* is an appropriate vehicle for Plaintiffs' Fifth Amendment claim.  Before the district court, Robertson and Rosado contended that under *Minneci v. Pollard*, 132 S. Ct. 617 (2012), a *Bivens* action is unavailable against Hutto COTRs, who lacked direct custodial responsibility for detainees.  The district court disagreed, concluding that *Minneci* does not govern this case because Robertson and Rosado are federal officials, not employees of a private entity.  On appeal, Robertson and Rosado have abandoned the argument that a *Bivens* action is categorically unavailable, and we need not consider it further.  *See United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument.").

No. 13-50459

allegedly failed to prevent a sexual assault, in violation of the inmate's Eighth Amendment rights. The court of appeals affirmed the district court's grant of summary judgment to the defendants on the grounds that the victim had failed to put authorities on notice of any potential danger. The Supreme Court held that a prison official violates an inmate's Eighth Amendment rights by showing "deliberate indifference" to a substantial risk of serious harm when the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The court adopted a requirement of subjective indifference and explained that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* This standard requires more than negligence, but less than a "purpose of causing harm" or "knowledge that harm will result." *Id.* at 835. Concluding that the district court erred in requiring that the victim notify the defendants in advance about a risk of harm, the Supreme Court reversed and remanded the case.

## A

Under *Iqbal*, we first look to Plaintiffs' Complaint, distilling the well-pleaded factual allegations—whose truth we are bound to presume at this stage—from any unsupported legal conclusions—whose truth we cannot assume. We conclude that the Complaint contains well-pleaded factual allegations that Robertson and Rosado had actual knowledge both of the Service Agreement violations and of the violated provision's objective of preventing sexual assault.

In the statement of their *Bivens* claim, Plaintiffs alleged that Robertson and Rosado "exhibited deliberate indifference" in violation of Plaintiffs' Fifth Amendment rights. At the outset, we observe that this allegation of "deliberate indifference" is merely a legal conclusion. *See Farmer*, 511 U.S. at 837 (articulating deliberate indifference test). Although this conclusion might

7

No. 13-50459

have been "couched as a factual allegation," we cannot accept its truth for purposes of evaluating the sufficiency of the pleadings. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

However, the Complaint did make two relevant factual allegations: 1) that Robertson and Rosado "willfully blind[ed]" themselves to violations of the Service Agreement pertaining to sexual assault prevention, and 2) that Robertson and Rosado failed to monitor detainee transports that they "knew to be proceeding in violation of applicable contracts, policies, and standards," whose purpose they understood. Complaint at ¶ 242. Stated simply, the Complaint alleged that Robertson and Rosado were aware both of violations of the Service Agreement provision requiring at least one transport officer to be the same gender as that of transported detainees, and of the provision's assault-preventing rationale.[3]

These factual claims are "well-pleaded factual allegations" and not merely legal "conclusions." *Iqbal*, 556 U.S. at 679. To support their claims, Plaintiffs further alleged that Robertson and Rosado, in addition to their duties to administer the Service Agreement, had on-site operational duties to arrange for detainee transportation, Complaint at ¶¶ 221–22, 226–27; had access to records showing that lone male officers transported female detainees on numerous occasions, *id.* at ¶¶ 74, 223; and understood the purpose of the Service Agreement provision given their awareness of ICE's history, *id.* at ¶ 52. Although these supporting allegations do not conclusively establish that Robertson and Rosado knew of the Service Agreement violations and of the violated provision's rationale, we assume—without deciding—the truth of

---

[3] Although other policies and standards are relevant, *see supra* n.1, they have the same legal significance in this case as the violated provision of the Service Agreement: They are obligations to prevent sexual assault during detainee transport, of which Robertson and Rosado were aware, and whose rationale they understood. To simplify our discussion, we focus our discussion on the violation of the Service Agreement provision.

No. 13-50459

Plaintiffs' factual allegations because they are not "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation, quotation marks, and alterations omitted).[4]

Robertson and Rosado submit that "alleged access to information" falls short of an allegation of subjective awareness of the Service Agreement violations. Furthermore, they read *Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995), to mean that access to information cannot prove constructive knowledge of that information, and rely on *Hare*, 74 F.3d at 650, for the proposition that constructive knowledge cannot establish the actual knowledge required by *Farmer*.

We disagree. First, Plaintiffs *did* allege that Robertson and Rosado had actual, subjective knowledge of the Service Agreement violations. Complaint at ¶ 242. And as already explained, this allegation is not a mere "naked assertio[n]"; it is supported—though not *proven*—by the additional factual allegations recounted above. *Iqbal*, 556 U.S. at 678. Although it is possible that Robertson and Rosado were mere dispatchers ignorant of the number or gender of assigned officers, or that they never reviewed the logbooks to which they had access, our task is not to weigh evidence at the motion to dismiss stage. Robertson and Rosado either misread the Complaint as alleging *only* access to information, or else misunderstand *Iqbal* to require us to assess the plausibility of factual allegations—as opposed to that of legal claims.

The cases that Robertson and Rosado invoke are also unavailing. In *Newton*, we reviewed the full record underlying a district court's bench trial

---

[4] If Plaintiffs had merely recited the legal test in *Farmer* by alleging that Robertson and Rosado were "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference," then their allegation would be no more than "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Here, by contrast, Plaintiffs allege specific knowledge on the part of Robertson and Rosado—they knew about the Service Agreement violations and the rationale behind the violated provision.

No. 13-50459

findings, and we reasoned that the fact of access to information alone was "insufficient" because of other evidence showing that knowledge could not be so imputed. *Newton*, 47 F.3d at 749. And in the portion of *Hare* that Robertson and Rosado invoke, we merely articulated the well-established rule of *Farmer*: an officer is liable under the Eighth Amendment only if he actually disregards subjective awareness of a substantial risk, and not where he objectively "should have been aware" of the risk. *Hare*, 74 F.3d at 650.

We accordingly conclude that Plaintiffs properly alleged that Robertson and Rosado had actual knowledge both of the violations of the Service Agreement provision and of that provision's assault-preventing objective.[5]

## B

Accepting the truth of the facts as alleged, we next consider whether these facts are sufficient to nudge the *Bivens* claim across the "plausibility" threshold. *Iqbal*, 556 U.S. at 678. That is, we must decide whether Robertson and Rosado's knowledge of violations of the Service Agreement provision prohibiting a lone male officer from transporting female detainees, where they also knew the provision aimed to prevent sexual assault,[6] make plausible Plaintiffs' claim that Robertson and Rosado were deliberately indifferent to a substantial risk of serious harm, in violation of "clearly established" law.

---

[5] During the briefing schedule, the district court issued an order granting the United States' motion to dismiss Plaintiffs' separate claim under the Federal Tort Claims Act ("FTCA"), on grounds that the claim falls within the discretionary-function exception to the FTCA's waiver of sovereign immunity. Certain language in this later order seems to be in tension with the order at issue in this appeal. *See* Order on the United States' Motion to Dismiss, No. 1:12-cv-00605-LY, at *6 (W.D. Tex. Aug. 7, 2013) ("Plaintiffs have failed to allege that any inherently discretionary function was performed in a deliberately indifferent manner."). However, this later order is not before us, and we decline to consider it.

[6] Because we accept the facts as alleged, we reject Robertson and Rosado's suggestion that this case concerns only the *negligent* monitoring of a contract. Plaintiffs alleged *knowledge* of the Service Agreement violations, and of the violated provision's purpose.

No. 13-50459

*Wyatt*, 718 F.3d at 502.[7]  Even presuming the truth of their factual allegations, we conclude that Plaintiffs' claim is not plausible because no clearly established law provides that violations of contractual terms that aim to prevent sexual assault are "facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837.[8]

In *Farmer*, the Supreme Court held that in order for an official to be constitutionally liable for showing deliberate indifference, "the official must both be aware of *facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (emphasis added).  Thus, the plausibility of Plaintiffs' claim turns on the threshold question of whether, under clearly established law, the alleged Service Agreement violations constitute "*facts* from which the inference could be drawn that a substantial risk of serious harm exists." *Id.*

*Farmer* teaches that such facts must be more indicative of an actual, substantial risk of harm than are the violations of contractual terms designed to minimize harm, which are here alleged.  At one extreme, an official need not anticipate the precise identity of an attacker or victim; it is enough that he is aware of the substantial risk. *Id.* at 843.  But by the same token, the Court recognized that the "excessive risk to . . . health or safety," *id.* at 837, must reveal itself to the official in concrete form—*e.g.*, prison inmates who forgo

---

[7] On appeal, Robertson and Rosado do not contend that their actions were "objectively reasonable" under the second step of qualified immunity analysis. *Wyatt*, 718 F.3d at 503.

[8] We decline to address Plaintiffs' suggestion that the fact of a lone male officer's transporting a female detainee, standing alone, supports an inference of a "substantial risk of serious harm."  They proffer a range of reasons—the "extreme level of authority" exercised by transportation officers, the detainees' lack of English skills and familiarity with regions through which they were transported, the "fears and stresses endemic to [the detainees'] tenuous status," and the history of sexual assault informing the Service Agreement provision. All but the last of these factors could manifest themselves throughout the detention facility. As both parties recognize, what distinguishes this case is the alleged violations of the Service Agreement provision, and we base our legal analysis on the significance of this alleged fact.

No. 13-50459

sleep and spend nights next to the guards' station out of a fear of rape, signs of exposure to infectious disease, *id.* at 843–44. In *Farmer* itself, the victim was a transsexual placed into a facility known *specifically* for its history of sexual assault. *Id.* at 848–50.[9]

Here, even if Robertson and Rosado knew of the Service Agreement violations, no clearly established law demonstrates that these contractual violations are sufficiently proximate to a substantial risk of serious harm. To be sure, the relevant Service Agreement provision creates a background legal obligation that, if fulfilled, likely helps minimize the risk of sexual assault during detainee transport. But Plaintiffs, in effect, want us to ratify the inverse statement: If an official knows of a contractual violation, then the risk of sexual assault automatically becomes constitutionally "substantial." *Farmer*, 511 U.S. at 837. This we decline to do. Even if we were to construe the Fifth Amendment to extend so far, no established authority at the time of the assaults would have enabled Plaintiffs to overcome qualified immunity. *Wyatt*, 718 F.3d at 503 (explaining that clearly established law must derive from "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity" at the time of challenged conduct (citation omitted)). The law at the time was not "beyond debate," and neither is it today. *Morgan*, 659 F.3d at 371 (citation omitted).[10]

_____

[9] *See also United States v. Gonzales*, 436 F.3d 560, 573–74 (5th Cir. 2006) (upholding finding of deliberate indifference based on evidence that officers failed to seek medical assistance for a pretrial detainee who was "foaming at the mouth," begging for help, and yelling "take me to a hospital," and with whom they had "close physical contact").

[10] The authorities relied upon by the district court and Plaintiffs are unpersuasive. In *Hostetler v. Green*, 323 F. App'x 653 (10th Cir. 2009) (unpublished), although the Tenth Circuit noted that a guard's knowing violation of a policy, which he knew "was enacted *specifically to prevent sexual assault*" did support "an inference that he was aware of an increased risk of sexual assault," *id.* at 658, the court also explained that it had "no occasion to decide whether this fact [of a knowing policy violation] alone is sufficient to create an

No. 13-50459

Crucially, the Complaint does not allege that any *concrete facts* betrayed a heightened risk of sexual assault during the transports—for example, that during the period of the assaults, Robertson and Rosado had knowledge of prior incidents of transport-related sexual assault at Hutto; of complaints, fears, or protests by transported detainees; or of the assaults themselves (in time to prevent them). The 2007 incident at Hutto in which the CCA-employed guard allegedly had sex with a detainee in her cell is also insufficient; the guard was terminated and the incident did not stem from any persistent risk related to detainee transport. Although Robertson and Rosado were allegedly aware of ICE's past struggles with sexual assault in general, the Complaint fails to allege any "longstanding, pervasive, well-documented, or expressly noted" risk of assaults either at Hutto or during detainee transports. *Farmer*, 511 U.S. at 842. Here, we simply cannot equate knowledge of the Service Agreement violations with the violation of a "clearly established" constitutional right.

The requirement that "facts from which the inference could be drawn that a substantial risk of serious harm exists" be proximate to the risk at issue accords with *Farmer*'s teaching that deliberate indifference has a subjective

---

inference of deliberate indifference," given that other facts indicated a substantial risk of harm, *id.* at 658 n.2. Here, we consider the question that *Hostetler* reserved. Similarly, in *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008), while the Tenth Circuit observed that a "knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference," *id.* at 919, in that case, ample evidence demonstrated that the policy was indeed "necessary" given the jail's troubled history, of which the defendant was fully aware, *id.* Here, by contrast, the violated policy aimed to minimize a risk of sexual assault, but no other allegations established that strict enforcement was "necessary" to protecting the detainees during transport. Lastly, *Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011), did not concern knowledge of a rule violation. Rather, *Cash* held that despite a rule (and laws) prohibiting any sexual contact between inmates and jail staff, a jury could have concluded that, based on evidence of a prior rule violation, the county was deliberately indifferent in failing to do more to prevent assaults. *Id.* at 334–38. Furthermore, the holding of *Cash* turned on its review of a judgment notwithstanding the verdict: The court based its decision on issues of "fact" and evidence before the jury rather than "as a matter of law" on the meaning of deliberate indifference. *Id.* at 339. Additionally, because *Cash* was decided after the events at issue here, it cannot constitute "clearly established" law for this appeal.

13

No. 13-50459

component absent from the civil law standards of negligence and objective recklessness. *Id.* at 837.[11] As the Supreme Court explained in *Farmer*, deliberate indifference is neither mere negligence nor an objective standard defined by whether an official "should have perceived" a risk. *Id.* at 838. Rather, here, we must ask whether Robertson and Rosado "consciously disregard[ed]" the substantial risk. *Id.* at 839 (citation omitted).[12]

Accepting the truth of Plaintiffs' factual allegations, we hold that no clearly established law provides that an official's knowledge of contractual breaches and of the breached provision's aim to prevent sexual assault of detainees, standing alone, amounts to deliberate indifference in violation of a detainee's Fifth Amendment rights, because no controlling authority provides that such breaches are "facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837.[13]

---

[11] An objective test of deliberate indifference applies to claims challenging a municipality's policies or customs, not acts or omissions of individual defendants as we have here. *See Farmer*, 511 U.S. at 840–42; *Hare*, 74 F.3d at 649 n.4.

[12] *See also Farmer*, 511 U.S. at 837 (describing test as "consistent with recklessness in the criminal law"); *id.* at 839–40 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard . . . , and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

[13] Neither is there clearly established law to support Robertson and Rosado's contention that knowingly permitting violations of a contractual provision known to prevent harm *do not* constitute deliberate indifference. Robertson and Rosado mistakenly rely on *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc). In *Scott*, a pretrial detainee was sexually assaulted by the lone male jailor on duty and brought a § 1983 action against the city. We reasoned that the city failed to take additional precautions to prevent sexual assault, but that no evidence showed it was aware of any resulting substantial risk. We concluded that there was no genuine dispute of fact about the municipality's lack of objective deliberate indifference. *Id.* at 54–55. Here, by contrast, Plaintiffs allege that Robertson and Rosado knowingly permitted violations of existing legal obligations, whose purpose they understood as preventing sexual assault. *Hovater v. Robinson*, 1 F.3d 1063 (10th Cir. 1993), is also unpersuasive because here, we assume the truth of Plaintiffs' factual allegation that Robertson and Rosado knew of both the violations and the assault-preventing *objective* of the violated provision. *See id.* at 1068 (noting that the "asserted rationale for the policy [to prevent sexual assault was] not supported by any evidence in [the] record."). Lastly, *Gagne v. City of Galveston*, 805 F.2d 558 (5th Cir. 1986), did not address a *knowledge* of a rule

14

No. 13-50459

Accordingly, because the Complaint did not plausibly allege the violation of a "clearly established" constitutional right, Robertson and Rosado are entitled to qualified immunity, *Wyatt*, 718 F.3d at 502, and the district court erred in denying their motion to dismiss.[14]

## C

Plaintiffs claim that assessing the Service Agreement violations *in isolation* is not our task, as discovery has not been taken. In Plaintiffs' view, focusing solely on the contractual violations presumes that no other evidence could support their *Bivens* claim. Plaintiffs accordingly assert that they have a "right to seek discovery . . . to build the necessary record in the case at hand."

Plaintiffs misunderstand our standard of review at the motion to dismiss stage. We recognize that the question of whether an official "had the requisite knowledge of a substantial risk is a question of fact" generally best resolved by discovery and fact-finding, should a claim survive a motion to dismiss. *Farmer*, 511 U.S. at 842. But here, at the motion to dismiss stage, we are tasked with deciding whether Plaintiffs have stated a plausible "claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In so doing, we cannot accept Plaintiffs' invitation to apply the "no set of facts" test, which the Supreme Court has firmly rejected. *Twombly*, 550 U.S. at 562–63; *see also Iqbal*, 556 U.S. at 670. It is, of course, conceivable that some set of facts could make Plaintiffs' claim plausible. Hypothetically, for example, Robertson and Rosado might have known of Dunn's dangerous proclivities, or they might have

---

violation, so we find unhelpful its proposition that the mere violation of a rule preventing prisoner suicide does not amount to the violation of a clearly established constitutional right.

[14] We hold only that it is not clearly established that *Farmer* extends to the facts alleged here, and do not decide whether this case presents any constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts need not decide the constitutional violation before reaching the question of whether the alleged right is "clearly established," overruling in part *Saucier v. Katz*, 553 U.S. 194 (2001)).

No. 13-50459

ignored contemporaneous distress calls from victims of or witnesses to the assaults. But "a plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. Here, Plaintiffs have proffered a legal conclusion that Robertson and Rosado were deliberately indifferent, and for the reasons detailed above, their factual allegations, even assumed as true, do not make this conclusion plausible.[15] Accordingly, the Complaint gives Plaintiffs no right to discovery.

At oral argument, Plaintiffs further suggested that to require heightened, particularized indications of substantial risk at the pleading stage would run afoul of *Farmer*. *Farmer* reasons that "a subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief." *Farmer*, 511 U.S. at 845 (alterations and internal quotations omitted). Similarly, an official need not know the victim's or attacker's identity in advance. *Id.* at 843.

But our holding today fully accords with *Farmer*. Indeed, we recognize that an action alleging subjective deliberate indifference can proceed without a completed attack or confirmed potential victims or aggressors. Such requirements would set the bar far too high to make this constitutional protection meaningful. Today, however, we observe that clearly established law has not set this bar as low as Plaintiffs would have it. No clearly established law provides that violations of a contractual provision aiming to minimize risk are "facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id.* at 837.

_____

[15] *See also Iqbal*, 556 U.S. at 684–86 (rejecting claim that lower court's promise of limiting discovery to qualified immunity issue, in anticipation of summary judgment motion, permits relaxed pleading standard).

No. 13-50459

## IV

For the foregoing reasons, we conclude that Robertson and Rosado are entitled to qualified immunity, and we REVERSE the district court and REMAND with instructions to dismiss.